IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AL GASIM OBIED IBRAHIM MOHAMMAD, Special Administrator of the Estate of ABDULRAHIM, deceased, et al., <br><br> Plaintiffs, <br><br> v. <br><br> AIRBUS, S.A.S., a corporation, et al., <br><br> Defendants. | No. 09 cv 1817 <br><br> Hon. Joan H. Lefkow |

**OPINION AND ORDER**

This is a tort case stemming from an airplane crash near Khartoum, Sudan. Plaintiffs include those injured in the crash ("Personal Injury Plaintiffs") and special administrators for those who perished in the crash ("Special Administrators") (collectively, "plaintiffs"). Defendants consist of various national and foreign corporations including Airbus S.A.S. ("Airbus"), United Technologies Corporation ("United Technologies"), Goodrich Corporation ("Goodrich"), Goodrich Aircraftactuation Systems ("Goodrich Aircraft"), Eaton Corporation Aerospace ("Eaton"), Parker Aerospace Corporation ("Parker"), GE Aviation ("GE Aviation"), Hamilton Sunstrand Corporation ("Hamilton Sunstrand"), Montrose Global Capital ("Montrose"), MGC Leasing, Ltd. ("MGC Leasing"), Bank of America ("Bank of America"), Goodrich Sensors & Integrated Systems, Inc. ("Goodrich Sensors"), Honeywell International ("Honeywell") and individual Matthew Hier ("Hier") (collectively, "defendants").[1] On February 2, 2009, plaintiffs filed a forty-two count complaint in the Circuit Court of Cook County alleging

---
[1] Airbus Americas, Inc. was voluntarily dismissed from the case [#92].

1

strict product liability, negligence, and negligent entrustment against defendants. Defendants removed the action to this court and plaintiffs subsequently moved to remand. For the following reasons, plaintiffs' motion to remand [#51] is granted.

## BACKGROUND

On June 10, 2008, the Special Administrators' decedents were killed and the Personal Injury Plaintiffs were injured when Sudan Airways Flight 109 ("Flight 109") from Amman, Jordan crashed while landing at the Khartoum airport in Sudan. Plaintiffs allege defendants Airbus, United Technologies, Goodrich, Goodrich Aircraft, Eaton, GE Aviation, Hamilton Sunstrand, and Hier negligently designed, manufactured, and sold the aircraft or its components. Specifically, plaintiffs allege that the aircraft's engines were susceptible to igniting and exploding; its deceleration mechanisms were not capable of slowing the aircraft under all reasonably anticipated conditions; the thrust reversers, brakes, and ground spoilers were subject to failure, deactivation, and deployment; the ground proximity warning system provided false or nuisance warnings that interfered with the safe operation of the flight; the intakes for the pitot tubes were subject to obstruction and blockage, resulting in misleading information being provided to the flight crew; and the air data computer provided incorrect and misleading information regarding the aircraft's speed. Plaintiffs also allege that defendants Bank of America, Montrose Global Capital, and MGC Leasing sold the defective aircraft and negligently entrusted it to an unfit operator.

## LEGAL STANDARD

District courts have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. A case falling within the original jurisdiction of the federal court may be removed from state to federal court. 28 U.S.C. § 1441. To determine whether a claim "arises under" federal law, the court will apply the "well pleaded complaint" rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of a plaintiff's properly pleaded complaint. *Merrell Dow Pharms. Inc.* v. *Thompson*, 478 U.S. 804, 808, 106 S. Ct. 3229, 92 L. Ed. 2d 650 (1986); *Burda* v. *M. Ecker Co.*, 954 F.2d 434, 438 (7th Cir. 1992). In some situations, however, a federal court may "look beyond the face of the complaint to determine whether a plaintiff has artfully pleaded his suit so as to couch a federal claim in terms of state law. In these cases, [federal courts] will conclude that a plaintiff's claim arose under federal law and is therefore removable." *Burda*, 954 F.2d. at 438.

There is no "single, precise definition" of federal question jurisdiction, but the "vast majority" of cases that come within the court's federal question jurisdiction are those in which federal law creates the claim. *Franchise Tax Bd.* v. *Constr. Laborers Vacation Trust*, 463 U.S. 1, 8-9, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983). Additionally, a case may arise under federal law "where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Id.* at 9. The federal courts, however, apply this rule cautiously to ensure that only those cases involving a substantial "controversy respecting the validity, construction, or effect" of federal law receive federal question jurisdiction. *Gully* v. *First Nat'l Bank*, 299 U.S. 109, 114, 57 S. Ct. 96, 81 L. Ed. 70 (1936) (citation and internal quotation marks omitted). "Any doubt regarding jurisdiction should be resolved in favor of the states, and the burden of

establishing federal jurisdiction falls on the party seeking removal." *Doe* v. *Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993) (citation omitted).

## DISCUSSION

Defendants urge this court to exercise federal question jurisdiction over plaintiffs' state law tort claims for two main reasons. First, defendants argue that substantial federal questions exist on the face of plaintiffs' well pleaded complaint, which necessitate federal resolution. Second, defendants argue that Executive Orders 13067 and 13400, governing United States ("U.S.") relations with Sudan, have the force and effect of federal law and therefore plaintiffs' claims "arise under" U.S. law.

## I. Federal common law of international relations

Federal question jurisdiction lies over state law claims that implicate significant issues of federal law. *Grable & Sons Metal Prods., Inc.* v. *Darue Eng'g & Mfg.*, 545 U.S. 308, 312, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005). Federal question jurisdiction does not merely exist when federal law applies; rather there must be an actual dispute regarding federal law. *Id.* at 315 n.3. This understanding of federal question jurisdiction "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.* at 312. Although there is no general federal common law, "there are enclaves of federal judge-made law which bind the States." *Banco Nacional de Cuba* v. *Sabbatino,* 376 U.S. 398, 426, 84 S. Ct. 923, 11 L. Ed. 2d 804 (1964). These enclaves of federal judge-made law may trigger federal question jurisdiction when the underlying federal issues are great. *Grable*, 545 U.S. at 312. Additionally, in some

4

limited circumstances, federal judge-made law may exist in the realm of international relations. *See Tex. Indus., Inc.* v. *Radcliff Materials, Inc.*, 451 U.S. 630, 641, 101 S. Ct. 2061, 68 L. Ed. 2d 500 (1981) (acknowledging the presence of federal common law in international disputes implicating U.S. relations with foreign states). Disagreement exists, however, among the circuits concerning the extent to which the federal common law of foreign relations necessarily triggers federal question jurisdiction. *Compare Torres* v. *S. Peru Copper Corp.*, 113 F.3d 540 (5th Cir. 1997) (federal question jurisdiction existed over state law tort claims brought by Peruvian citizens against U.S. corporations because the policy issues implicated by the case struck at Peru's sovereign and vital economic interests, which in turn impacted U.S.-Peruvian relations) *with Patrickson* v. *Dole Food Co.*, 251 F.3d 795 (9th Cir. 2001) (federal question jurisdiction did not exist over state law tort claims brought by Latin American laborers against U.S. corporations because the policy issues implicated by the case were too remote to impact U.S.-Latin American relations).

Defendants argue that plaintiffs' complaint includes issues that substantially impact relations between the U.S. and Sudan, thus requiring federal court adjudication. Specifically, defendants claim that the court's interpretation of Sudanese law and Sudanese aviation regulations implicate the federal common law of foreign relations. Defendants point to *Torres* v. *Southern Peru Copper Corp.* to support their contention that federal question jurisdiction exists over plaintiffs' claims. In *Torres*, 700 Peruvian citizens filed suit against Southern Peru Copper Corporation ("SPCC") in Texas state court alleging various state law causes of action including negligence and nuisance. *Torres*, 113 F.3d at 541. In considering whether the plaintiffs' claims implicated the federal common law of foreign relations, the Fifth Circuit recognized that the

5

Peruvian mining industry, of which SPCC was the largest company, was critical to the Peruvian economy, contributing up to 50% of the country's export income and 11% of its gross domestic product. *Id.* at 543. The court also observed that the Peruvian government had actively participated in the activities for which SPCC was being sued. *Id.* Finally, the court acknowledged that the Peruvian government had a keen interest in the litigation, as evidenced by the country's amicus brief and letter to the U.S. Department of State. *Id.* at 542. On that record, the court concluded that the plaintiffs' complaint implicated important foreign policy concerns, thereby triggering federal question jurisdiction. *Id.* at 543.

Similar to the defendants in *Torres*, defendants argue that plaintiffs' claims implicate important foreign policy concerns because plaintiffs seek damages for activities and policies in which a foreign sovereign was actively engaged. According to defendants, "the government of Sudan is actively engaged in the air carrier industry, including the design and maintenance of the aircraft itself, Sudan Air's compliance with the government regulations, the investigation of the accident, and the regulations of the accident site at the airport in Khartoum." Defs.' Resp. at 16. Therefore, argue defendants, this court should extend the *Torres* theory of federal question jurisdiction to reach plaintiffs' claims.

The facts in the instant case, however, are distinguishable from *Torres*. First, unlike the foreign sovereign in *Torres*, the government of Sudan has expressed no interest in this litigation. It filed no amicus brief with the court, nor, to this court's knowledge, did it contact any federal agency regarding this case. Additionally, the record contains no information demonstrating the economic significance of the aviation sector to the financial well-being of Sudan. As a result,

this court must assume that, unlike in *Torres*, the economic sector at issue here is not one of vital importance to the foreign state.

Instead, this case is more analogous to *Patrickson* v. *Dole Food Co.*, 251 F.3d 795. In *Patrickson*, banana workers from Costa Rica, Ecuador, Guatemala, and Panama brought a class action against Dole and other fruit companies for injuries they allegedly sustained from exposure to the chemical dibromochloropropane ("DBCP"). *Id.* at 798. The U.S. Environmental Protection Agency banned the use of DBCP in 1979, but Dole continued to distribute the chemical to fruit companies in developing countries. *Id.* Although the plaintiffs brought only state law claims, Dole argued removal was proper given the economic importance of the banana industry to plaintiffs' home countries. *Id.* at 800. Relying on *Torres*, Dole claimed the banana workers' case would affect U.S.-Latin relations and therefore required federal court adjudication. *Id.* at 801. The court, however, saw "no reason to treat the federal common law of foreign relations any differently than other areas of federal law" and declined to assert jurisdiction over the case. *Id.* at 803. In so doing, the Ninth Circuit declined to follow *Torres* insofar as it stood for the

> proposition that the federal courts may assert jurisdiction over a case simply because a foreign government has expressed a special interest in its outcome. It may well be that [U.S.] foreign relations will be implicated by the pendency of a lawsuit on a subject that affects that government's sovereign interests . . . . [b]ut we see no logical connection between such an effect and the assertion of federal-question jurisdiction.

*Id.* (citation omitted).

The Seventh Circuit has yet to apply either the *Torres* or *Patrickson* line of reasoning to determine whether the federal common law of foreign relations triggers federal question

7

jurisdiction. But even courts in the Fifth Circuit have refused to follow *Torres* and instead concluded that international aviation disasters do not present a substantial federal question. *See Navarro* v. *Bell Helicopter Servs., Inc.*, No. 3:00 CV 2005, 2001 WL 454558 (N.D. Tex. Jan. 25, 2001).[2] In *Navarro*, the plaintiffs filed state law tort claims against Bell Helicopter and others after a helicopter crashed in Toluca de Lerdo, Mexico, killing all six on board. *Id.* at *1. Relying on *Torres*, the defendants removed the action to federal court, arguing that the case implicated the federal common law of foreign relations. *Id.* at *3. Although the helicopter was registered, certified, and flown exclusively in Mexico and owned by the Mexican government, the court found that "Mexico's vital sovereign interests [were] not at stake in [the] litigation." *Id.* at *3 n.7. The court stated that, "[a]lthough the area of international relations is exclusively an aspect of federal law, it has never been the case that any dispute between private litigants must be litigated in federal court simply because the dispute features international aspects." *Id.* Because the plaintiffs' claims did not challenge Mexico's control over its airspace, its certification process, or its aviation regulations, the court ruled that the case did not implicate the federal common law of foreign relations and therefore federal question jurisdiction did not exist.[3] *Id.*

---

[2] Defendants urge this court to rely on two Texas District Court cases that come to the opposite conclusion of *Navarro*. *See Kern* v. *Jeppesen Sanderson, Inc.*, 867 F. Supp. 525 (S.D. Tex. 1994) (federal question jurisdiction existed over two international airplane disasters that occurred northeast of Kathmandu, Nepal); *Grynberg Prod. Corp.* v. *British Gas, P.L.C.*, 817 F. Supp. 1338 (E.D. Tex. 1993) (federal question jurisdiction existed over a dispute between oil and gas exploration firms to develop gas fields in the Republic of Kazakhstan). But neither case is binding on this court, and this court finds the reasoning of *Patrickson* and *Navarro* more persuasive.

[3] *Navarro* also calls into question the continued legitimacy of *Torres*. According to the *Navarro* court, the Fifth Circuit's decision in *Waste Control Specialists, LLC* v. *Envirocare of Texas, Inc.*, 199 F.3d 781 (5th Cir. 2000) left "little room for doubt" that "the substantial federal question doctrine can never support removal jurisdiction absent complete preemption." *Navarro*, 2001 WL 454558, at *3.

The Seventh Circuit has not addressed whether the presence of foreign aviation standards necessarily triggers federal question jurisdiction. Within the context of domestic aviation disasters the court's position is clear: state courts may apply federal aviation standards to resolve state law tort claims without triggering federal question jurisdiction. *See, e.g.*, *Vorchees* v. *Naper Aero Club, Inc.*, 272 F.3d 398 (7th Cir. 2001) (remanding state law trespass claim that implicated aspects of the Federal Aviation Act); *Bieneman* v. *City of Chicago*, 864 F.2d 463 (7th Cir. 1988) (federal aviation law does not preempt all common law remedies for airport noise and pollution). For example, the Seventh Circuit recently ruled that state law tort claims stemming from a domestic aviation disaster did not "arise under" federal law. *Bennett* v. *Sw. Airlines Co.*, 484 F.3d 907, 912 (7th Cir. 2007). In *Bennett*, twelve people were injured and one person was killed when a Southwest Airlines plane overran its intended runway during a snow storm and crashed onto the street. *Id.* at 908. The defendants argued that the plaintiffs' claims arose under federal law because federal aviation standards played a major role in determining whether Southwest, as the operator of the flight, Boeing, as the manufacturer of the airframe, and the City of Chicago, as the operator of the airport, acted negligently. *Id.* Additionally, the defendants pointed to *Grable* to support their theory of federal question jurisdiction.[4] *Id.* at 909. Relying on *Grable*, the defendants argued that removal was proper given the dominant role federal aviation standards play in the litigation of air transportation disputes. *Id.* The Seventh Circuit, however,

---

[4] *Grable* involved a rare quiet title action where the plaintiff alleged that the defendant, who had previously purchased the plaintiff's property in a tax sale, received an invalid title because the Internal Revenue Service ("IRS") failed to comply with federal notice requirements. 545 U.S. at 310. The Court ruled that the action was removable to federal court because the issue of IRS compliance was an essential element of the plaintiff's quiet title claim, even though the claim was one of state law. *Id.* at 315. Additionally, given the uncommon occurrence of such an action, the Court felt that removing the case to federal court would not disturb any congressionally approved balance of federal and state judicial responsibilities. *Id.* at 319-320.

disagreed, stating, "[t]his circuit has held many times that claims related to air transport may be litigated in state court [and] *Grable* does not change this conclusion. That some standards of care used in tort litigation come from federal law does not make the tort claim one 'arising under' federal law." *Id.* at 912 (citations omitted). The Seventh Circuit therefore remanded the *Bennett* case to state court.

This court reached a similar conclusion in *Vivas* v. *Boeing Co.*, when it ruled that state law tort claims stemming from an airplane crash in Peru could not be removed based on federal question jurisdiction, despite the prominent role federal aviation standards would play in resolving the dispute. 486 F. Supp. 2d 726, 732 (N.D. Ill. 2007). In *Vivas*, a commercial Peruvian airplane flying from Lima, Peru crashed to the ground during its landing approach in Pucallpa, Peru. *Id.* at 728. The plaintiffs filed state law products liability and negligence claims against the airplane's manufacturers. *Id.* The defendants argued that removal was proper because the "plaintiffs [would] have to prove, as the central element of each of their tort claims, that the defendants failed to comply with the standards prescribed by the Federal Aviation Administration." *Id.* at 730. Therefore, the court's interpretation and application of federal aviation law would govern the resolution of the plaintiffs' complaint. *Id.* This court, however, found that "although federal law shapes the standard of care, there is no known actual and substantial dispute about the interpretation of federal law that will control the outcome of this case." *Id.* at 731. Additionally, this court believed it was "quite apparent" that removing this case under federal question jurisdiction would disturb the congressionally approved balance between state and federal judicial responsibilities. *Id.* Therefore, the case was remanded to state court. *Id.* at 732.

The defendants' argument in *Vivas* was that the U.S. government's interest in regulating its aviation industry created a substantial federal question. Here, defendants simply add one step to the federal question analysis, arguing that the Sudanese government's interest in regulating its aviation industry affects U.S.-Sudanese relations, thereby creating a substantial federal question. Beyond that, the cases are largely the same: both pertain to aviation disasters that occurred on foreign soil and killed foreign nationals; both concern airplanes that were flown over foreign airspace; and both attempt to hold U.S. manufacturers liable based on state law negligence claims. But, just as "some standards of care used in tort litigation come from federal law [without making] the tort claim one 'arising under' federal law," *Bennett*, 484 F.3d at 912, so too can some standards of care come from a foreign sovereign's aviation law without prompting federal question jurisdiction. Although Sudanese law may affect the standard of care, the possibility that this litigation will affect U.S.-Sudanese relations is far too remote, especially given Sudan's apparent lack of interest in this case. Furthermore, permitting removal in international aviation disasters simply because foreign aviation standards apply would upset the congressionally approved balance between state and federal judicial responsibilities. "State courts award damages every day in air crash cases," *Bieneman*, 864 F.2d at 471, and this court sees no reason why state courts cannot continue to adjudicate aviation disasters involving foreign aviation law, including the claims presented in the instant case.

## II. Executive Orders 13067 and 13400

Defendants next argue this court must exercise federal question jurisdiction over plaintiffs' state law claims because Executive Orders 13067 and 13400 have the force and effect of federal law and are directly implicated within the four corners of plaintiffs' complaint.

Executive Orders 13067 and 13400 each pertain to U.S. relations with Sudan. Executive Order 1367 freezes Sudanese government property within the U.S. and prohibits certain business transactions between the U.S. and Sudan. Exec. Order No. 13067, 62 C.F.R. 59989 (1997). Executive Order 13400 blocks the transfer of property or interests between the U.S. and Sudanese entities or individuals involved in the Darfur conflict. Exec. Order No. 13400, 71 C.F.R. 25483 (2006). Defendants argue that plaintiffs base their state law negligent entrustment claim (Count XXVIII) on sanctions created by the Executive Orders, and that the resolution of this claim raises a substantial question of federal law which requires federal court interpretation. *See* Compl. Count XXVIII ¶¶ 5, 10, 12. Defendants also argue that payment of any monetary damages to plaintiffs would pose a federal question because the Executive Orders prohibit the transfer of property, including the payment of money, to certain Sudanese individuals or entities. At a minimum, argue defendants, any settlement payment made to plaintiffs must be approved in advance by the federal government to ensure that no individuals or entities involved in the conflict in Darfur receive money in violation of the Executive Order 13400.

This court, however, remains unconvinced that these Executive Orders create federal question jurisdiction over plaintiffs' state law claims, regardless of whether Executive Orders 13067 and 13400 have the force and effect of federal law. Although plaintiffs claim that "due in part to the sanctions against Sudan, the airline did not have sufficient, proper and adequate aircraft replacement parts, components, equipment and tools," Compl. Count XXVIII ¶ 10, such an indirect and passing reference to federal sanctions is insufficient to sustain federal question jurisdiction. Additionally, given that removal is improper when based on a federal defense "even if [that] defense is anticipated in the plaintiff's complaint, and even if both parties concede

that the federal defense is the only question truly at issue," *Caterpillar Inc.* v. *Williams*, 482 U.S. 386, 393, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987), it is inappropriate to remove a case based on hypothetical damage payments, that may or may not materialize from the litigation.[5] Given the tenuous connection between the Executive Orders and plaintiffs' state law tort claims, this court concludes that there is no federal question presented by plaintiffs' well pleaded complaint.[6]

## **CONCLUSION AND ORDER**

For the reasons stated herein, plaintiffs' motion to remand [#51] is granted.


Dated: November 10, 2009                     Enter: _____

                                             JOAN HUMPHREY LEFKOW
                                             United States District Judge

---

[5] This court remains similarly unconvinced that any alleged travel or discovery difficulties sufficiently heighten the federal issues in this case to a level warranting federal question jurisdiction. Defendants cite no authority for their contention that, given the location of information critical to the defense and difficulty in obtaining that information, this case raises imminent due process concerns. Additionally, this court is not persuaded that requiring the parties to obtain federal clearance to travel freely to and from Sudan raises a substantial federal controversy "respecting the validity, construction, or effect" of federal law. *Gully*, 299 U.S. at 114 (citation omitted).

[6] Having concluded that federal question jurisdiction does not exist over plaintiffs' state law claims, the court declines to address the procedural issues pertaining to service of process and consent to removal raised by defendants. Any such issues have been rendered moot by the court's foregoing opinion.